FILED
2014 Jan-27 PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ERWIN MCCRARY,** | } |
| **Plaintiff,** | } |
| v. | } Civil Action No.: 5:12-CV-3664-RDP |
| **CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,**[1] | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Erwin McCrary ("Plaintiff") brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Administrative Law Judge ("ALJ"), denying his claims for disability and Disability Insurance Benefits ("DIB"). 42 U.S.C. § 405(g). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be remanded.

**I.      Proceedings Below**

Plaintiff protectively filed for a period of disability and DIB on October 7, 2009, alleging a disability onset date of October 7, 2008.[2] (Tr. 223, 272). The Social Security Administration ("SSA") denied Plaintiff's application on February 18, 2010. (Tr. 135-36). On March 4, 2010, Plaintiff filed a request for a hearing before an ALJ. (Tr. 171). Plaintiff's request was granted and a hearing was held on April 21, 2011 before ALJ Gregory M. Wilson. (Tr. 101-30). Also

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin should be submitted for Commissioner Michael J. Astrue as Defendant in this suit.

[2] On April 21, 2011, Plaintiff amended his onset date from June 29, 2005 to October 7, 2008. (Tr. 223, 224).

present during the hearing was a vocational expert ("VE") who testified as to the vocational aspects of the case. (Tr. 103, 107, 123-29).

In his decision, dated July 15, 2011, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act. (Tr. 15-27). On July 25, 2011, Plaintiff requested a review of the ALJ's decision. (Tr. 7). Plaintiff's request was denied on August 21, 2012. (Tr. 3). As such, the Commissioner's decision is final and therefore a proper subject of this court's judicial review. *See* 42 U.S.C. § 405(g).

**II.    Statement of Facts**

Plaintiff was born October 26, 1959 and completed his high school education. (Tr. 104, 272). Plaintiff alleges that his disability began on October 7, 2008. (Tr. 223). Plaintiff claims that injuries stemming from a tractor running over him in 2003 have made it so that he cannot pick up things, his "fingers lock up," and he cannot "do a lot of standing or bending." (Tr. 277). Further, Plaintiff claims he has chronic pain, anxiety, depression, is "stressed out," and unable to "stay focus[ed]." (Tr. 109, 241). Plaintiff has past relevant work experience as a van driver, industrial cleaner, general maintenance helper, and groundskeeper. (Tr. 294-95). Plaintiff testified that he does occasional household activities, basic yard work, and regularly attends church and visits with friends and family. (Tr. 120, 122).

Plaintiff's date last insured was December 31, 2010. (Tr. 272). During his alleged period of disability, Plaintiff was seen by the following physicians: Drs. Richard Brown, Kendall Black, Prem Gulati, Jon Rogers, Gloria L. Sellman, and Robert Estock. Plaintiff has been a patient of Dr. Brown's since 1998. (Tr. 734). During the relevant period, Plaintiff's was seen by Dr. Brown on August 20, 2009 for a comprehensive medical evaluation and September 11, 2009 to go over the results of his evaluation. (Tr. 688). During these visits, Dr. Brown noted that Plaintiff was

doing "fair enough" and that his general health was "pretty good." (*Id*.). Dr. Brown wrote a letter, dated November 9, 2009, expressing his opinion with regard to Plaintiff's injuries, noting "the orthopedic specialists say there is nothing more to do" and that Plaintiff "continues to be disabled from the crippling effect of [his] injuries with chronic pain and limited mobility which is slowly increasing with the effects of aging." (Tr. 695).

On December 23, 2010, Plaintiff again saw Dr. Brown for a comprehensive medical evaluation. (Tr. 746). Plaintiff's chronic pain in his right leg and ankle where he wears a brace was noted, as well as a left hand problem that Dr. Black was planning surgery for soon. (*Id.*). Dr. Brown found Plaintiff in fair general health, but that "he remains disabled from his condition with the fracture of his ankle with the fusion and the chronic crippled walk he has." (*Id.*). Dr. Brown wrote another letter, dated March 16, 2011, in which he made the same assertions regarding Plaintiff's disability. (Tr. 734). Additionally, Dr. Brown submitted a (physical) Medical Source Opinion ("MSO") dated March 21, 2011. (Tr. 735-36). In his MSO, Dr. Brown opined that Plaintiff "continues to be disabled from the crippling effect of [his] injuries with chronic pain and limited mobility." (Tr. 736).

On May 11, 2009, Dr. Black performed surgery on Plaintiff's right hand for "right long finger and little finger trigger release." (Tr. 656). Plaintiff complained of pain during his post-operative visits with Dr. Black, but by his final visit on June 12, 2009, Dr. Black noted that Plaintiff's "triggering [had] resolved" despite Plaintiff still complaining of pain. (Tr. 652-55).

On February 1, 2010, Plaintiff visited with Dr. Gulati for a disability physical. (Tr. 696-98). During this physical, Dr. Gulati noted that Plaintiff "can alternate sitting and standing jobs without much difficulty." (Tr. 698). Dr. Gulati also noted that Plaintiff was able to walk short distances without needing the use of a cane and "able to touch the thumb to the fingers, open the

doorknob, close buttons, tie shoelaces and hold small objects without any difficulty." (*Id*.). Additionally, Dr. Gulati opined that surgery could repair Plaintiff's trigger finger and cubital tunnel syndrome in his left hand. (*Id*.).

In a January 12, 2010 statement regarding Plaintiff's mental impairments, Dr. Rogers opined that the extent of Plaintiff's mental impairment is severe and that his ability to function in the workplace would be "severely impaired." (Tr. 704, 705). However, during a February 1, 2010 psychological examination with Dr. Rogers, he noted Plaintiff "was able to repeat five digits forward and three digits backward; recall three objects after five minutes; discuss activities prior to and the day of his evaluation; name the birthdays of family members…name the President and capital of the United States…recognize the similarity among three objects; and exhibit normal stream of talk and mental activity." (Tr. 701-02).

On February 16, 2010, a Physical Residual Functional Capacity Assessment was completed by Dr. Sellman. (Tr. 706-13). Within this assessment, she wrote that Dr. Brown's November 8, 2009 "MSO is not given any weight" because Dr. Brown "is apparently uninformed of the injuries sustained by [Plaintiff]." (Tr. 712). Dr. Sellman's conclusion was based on the fact that Dr. Brown misstated Plaintiff's injury.[3] (*Id*.). She further noted that there was nothing to "suggest that [Plaintiff] is not fully capable of independent [activities of daily living], despite his description of severe debilitation." (Tr. 711).

A psychiatric review was completed by Dr. Estock on February 18, 2010. (Tr. 714-27). Dr. Estock noted that "[Plaintiff's] mental state does not appear as significantly limited as

---

[3] Dr. Brown stated that Plaintiff "suffered a [fracture] of [the left] proximal femur / [left] knee and crushed [right] ankle." (Tr. 712). However, Dr. Sellman noted that Plaintiff actually suffered a "[fracture] of the distal [left] tibia, NOT the [left] proximal femur. [Plaintiff] did not sustain a crush injury to [his] ankle, rather a [right] ankle sprain, both notations per ortho [treating physician] on 8/02/05 in [follow-up] clinic visit notation. Furthermore, [Plaintiff] has [full range of motion] of all [joints] except minor trigger fingers on [left] hand in his CE exam of 2/01/10, contrary to characterization by the MSO … ." (*Id*.)

4

[Plaintiff] states." (Tr. 726). Furthermore, Dr. Estock completed a Mental Residual Functional Capacity Assessment, dated February 18, 2010. (Tr. 728-31). Within this assessment he noted that Plaintiff is capable of performing "simple repetitive work activities" and "would work best in a small group environment." (Tr. 730).

Plaintiff also visited Dr. Anderson regarding his left knee and right ankle injuries. (738-44). On May 4, 2010, Plaintiff reported to Dr. Anderson that his pain was a 7-8 on a 0-10 scale. (Tr. 738-39). Dr. Anderson observed that Plaintiff was "alert and oriented times three, friendly and cooperative," noting that there was "no warmth, erythema, or swelling" in Plaintiff's left knee, and that Plaintiff had "full" range of motion in his left knee and "good" range of motion in his right ankle. (*Id.*). Plaintiff again saw Dr. Anderson on November 1, 2010, and Dr. Anderson's observations were the same. (Tr. 740-41). During a December 23, 2010 visit, Dr. Anderson noted that "[Plaintiff] appears in fair general health," but that "[h]e remains disabled from his condition with…the chronic crippled walk he has." (Tr. 746).

**III.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such

5

impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity from his amended onset date of disability, October 7, 2008,[4] through his date last insured, December 31, 2010. (Tr. 17). The ALJ determined that Plaintiff has a combination of severe impairments: status post ORIF of the left lateral tibial plateau; status post-surgical repair

---

[4] The ALJ's decision misstates Plaintiff's amended onset date of disability as October 8, 2008. (Tr. 17). *See* Tr. 104, 223.

of the left popliteal tendon; status post right ankle fracture; and left tenosynovitis and trigger finger. (Tr. 17, Finding No. 3). The ALJ further determined that Plaintiff has the following non-severe impairments: remote bone spur fracture of the left hip; status post right trigger finger release; depression; low IQ; pain disorder; and anxiety. (Tr. 17).  However, the ALJ did not find that Plaintiff has an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20).

In conclusion, the ALJ determined that Plaintiff is incapable of performing his past relevant work, but through his date last insured, has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c),[5] and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25-26).

## IV.   Plaintiff's Arguments for Reversal

Plaintiff presents two arguments for reversal: (1) the ALJ did not offer good cause for according less weight to the opinions of his treating physician, Dr. Brown; and (2) the ALJ failed to properly evaluate the credibility of his own testimony of disabling symptoms. (Pl.'s Br. at 6, 11).

## V.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

---

[5] The ALJ stated that Plaintiff has the capacity to "lift fifty pounds occasionally and twenty five pounds frequently and to sit for six of eight hours, walk for six of eight hours, and stand for six of eight hours." (Tr. 21).

7

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

### A. The ALJ Erred in Weighing the Evidence Submitted by Plaintiff's Treating Physician.

Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight and the ALJ must articulate good reason if he discredits the opinion of a treating physician. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). If the treating physician's opinion is unsupported by objective medical evidence or is inconsistent with the record as a whole then the ALJ has good reason to discount the opinion. *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (2004). The ALJ, in discounting Dr. Brown's assessment, referenced a single three word section of Dr. Brown's records in which Dr. Brown stated that Plaintiff was "doing real good." (Tr. 24). The ALJ appears to have relied heavily on this brief statement, but he incorrectly dated this

8

statement as being made in October 2008, as opposed to the actual date in the record indicating the visit was in August 2008.[6] (Tr. 24, 632). This means that the visit the ALJ is relying on actually took place before Plaintiff's disability onset date, and was therefore outside of the relevant period. Additionally, in closely reviewing Dr. Brown's notes from this particular visit, this visit was "to go over [Plaintiff's] **lab for the control of his hypertension and hypercholesterolemia**" (emphasis added), the results of which were noted as "normal," "good," or "okay." It does not appear to the court that Dr. Brown's reference to Plaintiff "doing real good" applies to anything other than Plaintiff's hypertension and hypercholesterolemia, even though the ALJ determined that "[a]lthough Dr. Brown observed a stiff right ankle and nodule on [Plaintiff's] left hand in December 2010" [], these abnormal musculoskeletal findings were anomalous within Dr. Brown's records." (Tr. 24).

Furthermore, the ALJ's statement that Dr. Brown's findings in Plaintiff's December 2010 visit "were anomalous within Dr. Brown's records" without providing any specific instance of an anomalous finding within those records during the relevant disability period is in error. (Tr. 24). This statement is far too general and conclusory without specific evidence to permit any meaningful judicial review. *See Morrison v. Barnhart*, 278 F. Supp. 2d 1331 (M.D. Fla. 2003) ("… the ALJ's explanation that [the doctor]'s opinion 'is not consistent with the evidence of record as a whole, including the doctor's own examination findings,' is too general to permit meaningful judicial review ….").

The ALJ must specify how the statements are contradicted in order to serve as the substantial evidence needed to discredit a treating physician. *Green v. Comm'r of Soc. Sec.*, 481 F. Supp. 2d 1241, 1246 (N.D. Ala. 2007). In discrediting Dr. Brown's medical opinions from November 2009 and March 2011, the ALJ simply stated "the record as a whole does not support

---

[6] The visitation document referenced by the ALJ states that the visit took place on "8-21-08," not October. (Tr. 24, 632). The Commissioner also erroneously cited to this visit as occurring in October 2008 within his Brief. (Comm.'s Br. 8).

Dr. Brown's opinion, and his own medical records in fact do not support his opinion." (Tr. 24). Such conclusory statements are insufficient to serve as substantial evidence to discredit a treating physician. *See Borden v. Astrue*, 494 F. Supp. 2d 1278, 1282 (N.D. Ala. 2007). The ALJ did proffer evidence from Dr. Gulati, a consulting physician, as a means of discrediting Dr. Brown's statements. (Tr. 24-25). Although it is true that the ALJ may choose to give more weight to a consulting physician rather than a treating physician, he must do so with good cause. *Crumpton v. Shalala*, 881 F. Supp. 547, 552 (N.D. Ala. 1994). The ALJ failed to articulate such good cause, as "the report of a consulting physician who examined claimant once does not constitute substantial evidence upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Kent v. Sullivan*, 788 F. Supp. 541, 544 (N.D. Ala. 1992).

The court finds the ALJ failed to "state with particularity the weight he gave different medical opinions and the reasons therefor." *Sharfaz v. Bowen*, 825  F.2d 278, 279 (11th Cir. 1987).  The ALJ gave substantially more weight to the opinion of Dr. Gulati rather than that of Dr. Brown, but at no point did the ALJ specifically state what weight he gave to the different medical opinions, nor did he state why he was gave one medical opinion preference over another. Without such specificity, the court is left to guess as to the weights afforded by the ALJ. Such conjecture does not lead to a proper review.

Finally, the ALJ improperly used Plaintiff's "sporadic and infrequent treatment" as a reason for deeming his mental impairments to be non-severe. (Tr. 25). However, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7P, 1996 WL 374186, 7 (July 2, 1996). The ALJ discounted the severity of Plaintiff's mental impairments because of Plaintiff's failure to get

frequent treatment without considering any explanations Plaintiff might have provided. Instead, in direct contravention to SSR 96-7p, the ALJ drew negative inferences from Plaintiff's infrequent treatment. On the other hand, the ALJ's findings regarding Plaintiff's mental impairments are not in error, as the ALJ did provide substantial evidence for finding that Plaintiff's mental impairments were non-severe. First, the ALJ properly looked to Plaintiff's own testimony regarding his daily activities to cast doubt on Dr. Rogers' statements. (Tr. 18-19). Additionally, the ALJ properly referred to specific consultative notes of Dr. Rogers that directly contradict the doctor's statement regarding Plaintiff's mental impairments. (Tr. 23-24). Therefore, although the ALJ erred in giving weight to Plaintiff's lack of treatment "without first considering any explanations," he properly analyzed Plaintiff's mental impairments. SSR 96-7P, 1996 WL 374186, 7 (July 2, 1996).

> **B.**  **There was Substantial Evidence within the Record to Support the ALJ's Pain Findings and the ALJ Applied the Proper Legal Standards in Determining the Credibility of Plaintiff as to Those Findings.**

Plaintiff asserts that the ALJ improperly evaluated the credibility of his testimony of disabling symptoms, and his findings are inconsistent with the Eleventh Circuit pain standard. (Pl.'s Br. 11-13). Plaintiff claims that the ALJ's reasons for discrediting his testimony were "vague and unsupported." (Pl.'s Br. 11). Plaintiff also asserts that the ALJ's decision is not supported by substantial evidence, and the record supports his testimony regarding his symptoms. (Pl. Br. 12). To the contrary, the ALJ correctly applied the Eleventh Circuit's pain standard test and looked at specific evidence while explicitly discrediting Plaintiff's testimony regarding his pain. The court finds the ALJ's findings are supported by substantial evidence and that the ALJ utilized the proper legal standards in discrediting Plaintiff's pain testimony.

The Eleventh Circuit's pain standard is well-settled:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr. 22). This shows that the ALJ found evidence of an underlying condition, satisfying the first prong of the test, and also found that the condition could reasonably be expected to give rise to the claimed pain, satisfying the second prong of the test. The ALJ also explained why he did not find Plaintiff's testimony credible.

In order to discredit such testimony, the ALJ "must either explicitly discredit such testimony or the implications must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Here, the ALJ explicitly discredited Plaintiff's testimony by citing specific instances of contradiction in the medical records of Dr. Gulati (as to Plaintiff's physical impairments) and Dr. Rogers (as to Plaintiff's mental impairments). (Tr. 22-23). With regard to Plaintiff's physical impairments, the ALJ noted that Dr. Gulati observed Plaintiff to have full range of motion of the extremities, walk short distances without a cane, and squat and rise up. (*Id.*) Also, the ALJ discussed the fact that Dr. Carol Walker did not observe any pain behavior in Plaintiff, despite Plaintiff reporting a pain level of

nine out of ten.[7] (Tr. 23, 460). As Plaintiff's testimony was inconsistent with the diagnostic findings of his examining physicians, the ALJ was proper in discrediting Plaintiff's testimony here. *See Hurley v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 103, 116 (11th Cir. 2005) (holding that the opinions of the claimant's physicians constituted substantial evidence to determine that claimant's pain was not disabling when the claimant's testimony was inconsistent with the physicians' clinical and diagnostic findings).

Concerning his mental impairments, the ALJ discussed the specifics of Plaintiff's demonstrated mental capabilities during Plaintiff's examination with Dr. Rogers. (Tr. 19, 701-02). The ALJ further discussed that Dr. Walker concluded that Plaintiff did not provide full effort on his IQ test.[8] (*Id.*). An ALJ may rely upon a physician's statement that a claimant is exaggerating his conditions when discrediting the claimant's testimony. *See Johnson v. Barnhart*, 138 Fed. Appx. 266, 270 (11th Cir. 2005) (using physician's note that claimant was being "dramatic" to support discrediting claimant's testimony). Here, the ALJ properly cited specific medical evidence from the record here to discredit Plaintiff's testimony regarding his mental impairments.

In discrediting Plaintiff's testimony with regard to his alleged anger outbursts and depression, the ALJ looked to his daily activities. *Couch v. Astrue*, 267 Fed. Appx. 853, 856 (11th Cir. 2008). The ALJ noted that Plaintiff "has maintained a long-term marriage, attends church and Bible study regularly, and visits with family and friends." (Tr. 24). From these activities, the ALJ concluded that Plaintiff showed "no significant observations of uncontrollable anger" and has "no problem getting along with others." (Tr. 24). The key issue here is whether

---

[7] Plaintiff indicated this pain level to Dr. Walker at a November 7, 2005 Disability Determination Examination. (Tr. 460-66). The ALJ made no mention of the seven to eight out of ten that Plaintiff reported to Dr. Anderson on May 4, 2010. (Tr. 738-39).

[8] The IQ Test was administered at the same November 7, 2005 Disability Determination Examination with Dr. Walker. (Tr. 464-65).

13

Plaintiff has the ability to engage in gainful employment in spite of his impairments. *See Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003). Plaintiff's ability to regularly engage in social settings evinces an ability to work with others under his claimed current levels of anger outbursts and depression. Therefore, this serves as substantial evidence to show that Plaintiff's anger and depression impairments do not rise to a level that would prevent him from engaging in gainful employment.

## VII.   Conclusion

After careful review, the court concludes that the ALJ did not apply the proper legal standards in determining that Plaintiff is not disabled. Accordingly, the ALJ's final decision is due to be remanded in order for the ALJ to reevaluate the evidence and determine how much weight should be given to the various physicians and the reasoning behind giving such weight. The ALJ's findings of fact and conclusions of law are otherwise due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this January 27, 2014.

                                                                                 _____
                                                                                 **R. DAVID PROCTOR**
                                                                                 UNITED STATES DISTRICT JUDGE